CITY OF ST. PAUL *vs.* JAMES A. BYRNES.

CITY OF ST. PAUL *vs.* FREDERICK W. LULEY and another.

CITY OF ST. PAUL *vs.* JOHN PATRIDGE.

February 8, 1888.

**Municipal Corporation—Regulation of Slaughter-Houses in St. Paul.**
Sp. Laws 1887, *c.* 370, in relation to slaughtering establishments in the Seventh ward of the city of St. Paul, supersedes the authority delegated to the city in its charter to direct as to the location or removal of slaughter-houses in the particular district referred to, and provides an independent procedure therefor.

In each of the above cases the defendants were arrested and brought before the municipal court of St. Paul, upon complaints charging them with violations of ordinance No. 64 of that city, (Mun. Code, St. Paul, 403,) relating to slaughter and packing-houses. The defendants were tried, convicted and sentenced, and appeal from the judgments.

*Geo. C. Ripley* and *A. B. Jackson,* for appellant Byrnes. ·

*Warner & Lawrence,* for appellants Luley and another.

*I. V. D. Heard,* for appellant Patridge.

*W. P. Murray,* for respondent.

VANDERBURGH, J. These cases may be considered and determined together. They involve the construction of chapter 370, Sp. Laws 1887, approved February 26, 1887, and the effect thereof as respects the operation of ordinance No. 64 of the city of St. Paul in reference to "slaughter and packing-houses." The first section of this ordinance provides that no person shall kill, slaughter, dress, or pack any cattle, calves, sheep, or swine, or establish a manufactory for candles or soap, within the limits of the city, without a permit of the city council. The second section relates to the procedure for obtaining a permit, the third and fourth include regulations for the management of the business, and section 5 provides a penalty for the violation of the ordinance. The following is the statute referred to:

"Be it enacted by the legislature of the state of Minnesota:

"Section 1. That after the first day of April, 1887, no slaughtering or rendering establishments shall be suffered or permitted within the Seventh ward of the city of St. Paul north of St. Clair street in said ward, as said ward was constituted and organized February 1, 1887; nor shall any slaughtering or rendering by butchers or others be suffered or permitted within said ward north of St. Clair street. And any person who shall establish or maintain a rendering or slaughtering establishment, and any butcher or other person who shall render or carry on the business of slaughtering, in said ward, north of St. Clair street, is guilty of a misdemeanor, and shall be subject to the same punishment as is now prescribed by the Criminal Code of the state for misdemeanors.

"Sec. 2. This act shall not affect any existing establishment or any person now engaged in the business described in this act, within the territory defined in section one (1) of this act, until the city of St. Paul shall have paid, or caused to be paid, to the persons owning such establishments and carrying on such business the damages suffered by such person by the operation of this act; such damage to be ascertained and paid in the manner now prescribed by law for the ascertainment and payment of damages in the case of the condemnation of land for highway purposes, and the payment of damages therefor, in the city of St. Paul, nor until 60 days after the payment of such damages.

"Sec. 3. The city of St. Paul is hereby authorized and empowered to pay the damages provided for in this act.

"Sec. 4. This act shall take effect and be in force from and after its passage.

"Approved February 26, A. D. 1887."

These prosecutions were instituted for the violation of the ordinance by the defendants since the passage of the special act; and it appears that the alleged offences against the ordinance were all committed within the territory or district defined in this act. The defendants Byrnes and Luley had established and were operating slaughter-houses within these limits prior to the passage of the act; and the defendant Patridge was at the time complained of a servant of the

v.38m—12

Minnesota Transfer Dressed Meat Company, which had also been similarly engaged within the same district. As we understand it, the cases stand on the same footing.

The act is specially limited to the particular district, and entirely supersedes the jurisdiction of the city authorities to grant or refuse permits, or to control the location of the business of slaughtering and butchering within the limits defined. It withdraws from the city its delegated authority and right to legislate upon that particular matter. It absolutely forbids the presence of slaughter-houses and the business of butchering within that district, and declares the penalty; with a saving clause, however, in favor of persons who were established in the business when the act was passed, and in respect to them a new and special procedure is provided, under which the existing establishments may be got rid of by the city. For reasons satisfactory to the legislature, and acting, as we may presume, upon sufficient evidence, it has deemed proper to provide that, before the particular class of persons designated in the second section should be compelled to suspend or remove their business, compensation for the depreciation of their property caused thereby should be secured in the way pointed out. This act is entirely inconsistent with the provisions of the ordinance on the subject, and it is evident that it was not intended they should both stand together. Certainly, the provisions in respect to the existing establishments would be entirely nugatory if the city could proceed summarily thereafter to suppress them by prosecutions under the ordinance. The intention, it is clear, was to ultimately remove all such business from that district. The act is specially directed to that subject, and it covers the whole matter. It is not claimed that the act did not abrogate the licenses after April 1st, or that new ones might thereafter be granted from year to year, and it would seem to be clear that the power conferred by the charter to direct as to the location or removal of these establishments in the district was taken away and superseded by the act in question. Of the propriety and policy of this legislation we are not to judge.

The question considered has, of course, no reference to the authority of the city to enforce reasonable sanitary regulations in respect to the manner of conducting the business as to cleanliness of prem-

ises, disposal of offal, etc., but to the procedure which the law has provided to secure the suspension and removal of establishments of that character in the particular district designated. Whether these defendants are any or all of them entitled to claim the benefit of the provisions of the second section, or are liable to prosecution under the first section, we are not called upon to determine, but these questions could not be litigated in prosecutions under the ordinance which we think are unauthorized. It is therefore unnecessary to consider other points raised.

Judgment reversed in each case, and complaints dismissed.